Judges today are the Honorable Bobby E. Shepard from Arkansas. Judge Shepard, can you hear? I can. Great. And then the Honorable L. Stephen Gross from Nebraska. How about you, Judge Gross? Yes, I can hear. Great. And of course, I'm Duane Benton from Missouri. Ms. Rudolph or Circuit Court Gans, I know he's there too. How many public listeners do we have? We have six participants. But how many public listeners do we have? They could dial in, you know? Exactly. We have six additional to who is called on. Okay, great. So we have at least six public listeners. And I would ask counsel to speak distinctly. I've done these before, and that is the real challenge for all of us, including the judges. Mr. Waldman, can you hear clearly? Yes, I can, Your Honors. Thank you. Mr. Erb, can you hear clearly? Good afternoon, Your Honors. Yes, I can. Okay. And Mr. Winthrop, can you? Yes, I can. Thank you. Okay, certainly. Okay, well, I think then we're ready to proceed. Mr. Waldman, please proceed when you're ready. Thank you. May it please the Court, Judge Waldman for movement Appellant Adam Stark. Your Honors, I would like to begin by addressing the errors of law made by the District Court regarding the Rule 24A2 motion, and then I will move on to the errors of law made by the District Court on the motion to stay pursuant to the first to file rule. First, District Court erred in claiming that Appellant Stark's interests were not impaired because he had the right to opt out of the class. While the 8th Circuit has not addressed the situation, two other circuit courts have and rejected that reasoning. As the 11th Circuit expressly held in Tech Training Associates, Inc., the Buccaneers Limited Partnership, a case directly on point, the risk that movements will be bound by an unsatisfactory class action settlement satisfies the impairment element of Rule 24A2. The 11th Circuit noted that if the right to opt out alone meant that a class member's rights were not impaired, class members could never intervene in a class action because they would always have recourse to Rule 23 procedural protections and would therefore always fail to satisfy the impairment prong. And I'm quoting directly from that opinion at 696. The 11th Circuit found that such a conclusion contravened the Supreme Court's recognition that members of a class have a right to intervene if their interests are not adequately represented by existing parties, quoting Standard Fire Insurance Company v. Merrill's of the Supreme Court, as well as the Advisory Committee notes to Rule 23A2. Here, stark was not adequately represented by a police acquaintance, as I will get to in a minute. In the Inland Community Bank of North Virginia, a case cited by the District Court for a different proposition, the 3rd Circuit similarly held that the impairment of interest standard is always satisfied in the class action context by the very nature of Rule 23 representative litigation. The District Court also urges a matter of law in finding that Swinton adequately protected stark's interest. This Court has repeatedly held that while a proposed intervener bears the burden of demonstrating its interests are not adequately represented by existing parties, that burden is minimal. While there are no parallel class actions and no settlement, as was the case in Jenkins v. State of Missouri, for that presumption to apply, the interest of the proposed intervener in the existing party must be identical, and whether the representative of a party vigorously prosecuted the litigation is a key factor, as this Court stated in L. V. Gandler's Supplying Inc. 55F3-407-410. However, the presumption of adequacy is weak. In effect, it merely imposes upon the proposed intervener the burden of coming forward with some evidence to the contrary. And I just want to point out that the presumption of adequacy in the proposed intervener in the existing party does not apply to the proposed intervener in the existing party. While the District Court recognized that the presumption could be overcome if the proposed intervener demonstrates adversity of interest, collusion, or nonfeasance on the part of a party, here a parent has put forth sufficient facts demonstrating that Splinton and Stark's interests were not identical or aligned, as well as demonstrating collusion, misfeasance, or nonfeasance on Splinton's part. First, at the time Splinton negotiated his settlement, he was in a weakened bargaining position due to his unique vulnerability to Square Trade's already pending motion to compel arbitration and stay his action, a motion Stark had already defeated in his action. Indeed, defendant Square Trade has publicly stated that there are important differences between the Stark action and Splinton's action regarding the police's unique vulnerability to an arbitration clause at the time he was negotiating the proposed settlement. Square Trade admitted this in open court in the Eastern District of New York's Stark action. The transcript of that proceeding was filed with this court in connection with this appeal on April 3rd as an exemptee to the appellant's response to appellee Square Trade's Rule 28J citation, and I implore the court to review pages 12 to 14 of that transcript, where Square Trade's counsel lays out in detail Splinton's vulnerability to the arbitration clause and how, if the settlement is not approved, Square Trade will be pressing its motion to compel against Splinton. Square Trade's subsequent admissions before the Eastern District of New York court provide the exact evidence that Square Trade initiated settlement discussions with lawyers who presented less of a threat to the defendant, which the A representative party's greater willingness to compromise can impede it from adequately representing the interests of a non-party, and I am quoting from the 11th Circuit and Tech Training Associates 874 F. 3rd at 697, which found that a potential statute of limitations issue relating to plaintiff demonstrated a risk that the plaintiff had a greater incentive to settle as compared to the movants. Because appellee Splinton's interests, due to his unique vulnerabilities, were not identical to Stark's interests, Splinton did not adequately represent Stark or the class. Additionally, for the second, Splinton failed to pursue his litigation vigorously on behalf of the class. He took no discovery, did not file any motions, no court rulings had been rendered, he just settled. Third, the settlement negotiations were unaided by a third-party neutral, i.e. a mediator, so there was nothing to suggest intense, arm's-length negotiations. Having a mediator and vigorously prosecuting a litigation were present in the majority of cases cited by the appellees and the district court, but were not present here. Additionally, the circumstances leading up to the proposed settlement played out as the classic reverse option scenario as detailed in our papers, which I am happy to repeat. As an aside, it has now been 19 months since the preliminary approval motion and the district court has still not finally approved that settlement for good reason. By filing that Stark had not proved a reverse option, the district court imposed an impossible catch-22. A proposed intervener must prove a reverse option before being allowed to intervene, but the only way the proposed intervener can realistically obtain evidence of a reverse option beyond circumstantial evidence is to allow him to intervene in order to date discovery of the parties and their counsel who similarly conducted the reverse option. By failing to permit a parent Stark the opportunity to prove the opposite, the district court erred in denying the Rule 24 motion. As it also did by failing to liberally construe the facts of all doubts resolved in favor of the proposed intervener as mandated by this court. And finally, the district court erred in declaring to stay or transfer what it called a copycat action in deference to the Stark action as it should have done under the first file rule. Very simply, the district court holding, finding a compelling circumstance where there was a settlement, even if it was a bad settlement, turns the first to file rule on its head, it turns it into a first to settle rule and would encourage copycat filings and reverse options, which would soon be the rule and not the exception throughout the new circuit. I'll keep my remaining time for rebuttal. Thank you. Mr. Wallman, your time is reserved. Thank you for the argument, but please stand by. Judge Groth, do you have any questions for Mr. Wallman? Yes, I do, Mr. Waldman. My first question is a Rule 24 question, and it concerns the adequacy of the representation of your client's interest. I do understand that your client has some unique personal interest here, but it seems to me that Rule 24 is really concerned with his interest in the property, so the transaction is the subject of the case, and here that would be the compensation for violation of consumer protection laws. So the question is how has Mr. Swinton failed to adequately represent the class members in that regard? Well, Your Honor, the question is actually the flip side of that. Swinton had a unique interest. Swinton could not adequately represent Stark because he had a unique interest in settling quickly in order to evade his vulnerability on the arbitration clause issue. So because he had a unique interest, the interest of Stark and Swinton were not aligned, and he could not have adequately represented the class or Stark's interest. Judge Groth? Thank you, and I do have one other question. We actually haven't reached this yet, but you may get to it in your rebuttal, but I'm going to go ahead and ask it anyway. This has to do with whether we have jurisdiction over the district court's decision on the push-to-fire rule, given that the client's not a party. You mean, is it moot? Is that the question? Well, why would we have jurisdiction to even address that issue if I'm a non-party? Well, the district court actually said that if the settlement is not approved, and in fact it has not been approved, that she would revisit the first-to-file action because it wouldn't be binding on our client. The only reason he opted out of the class was because of the ruling refusing to allow him to intervene. However, if this court reverses the motion to intervene, he should be allowed to opt back in the class so he can introduce this evidence, whether he's to take discovery, and it would not be a futile gesture since the settlement has still not been approved. Thank you. Judge Groth, I assume you're done by that? Yes. Good. Judge Shepard, do you have any questions? I have one question. Could you comment on the impact or implications of the order that was brought to the court's attention from the Eastern District of New York stating proceedings there? Not sure exactly what you mean, but that is a very relevant point of view. It actually shows that our plaintiff, Stark, his interests have been impacted and impaired by this litigation. That case has now been staged for six months expressly due to the fact that the settlement decision is pending. Now, one of the key reasons that the court said it was not going to apply the first to file rule was essentially judicial efficiency. She was worried that because at the time, because the Second Circuit decision had been pending, that the court had been staged and they didn't want to wait around. However, what has actually happened is it's been 19 months since the preliminary injunction, the preliminary approval of settlement motion was made. The case is still not moving. That decision still hasn't been rendered. Yet, after the Second Circuit Court of Appeals decision was rendered against Square Trade and in favor of Stark, that case started up again. However, due to the settlement decision that is pending, our action in the Eastern District of New York has been staged and that has negatively impacted, actually impaired, the interest of Stark. Thank you, Mr. Wallman. I took it, Judge Shepard, that you are done questioning, right? Yes. Yes, Your Honor. Thank you, Your Honor. Mr. Wallman, thank you for standing by to do that. We'll get back to you, of course, for rebuttal argument. But, Mr. Erb, are you ready to proceed? I am, Your Honor. Thank you. Please proceed. May it please the Court, Counsel, Your Honors, just so that the Court is aware, Mr. Winthrop and I, co-appellees, will be splitting our argument time of 10 minutes, 5 minutes per party, and I'll be receiving a warning 30 seconds to go on my 5 minutes. Your Honors, this is an attempted money grab by Mr. Stark disguised as a petition to intervene and a motion for stay or transfer. In the end, reading between the lines of Mr. Stark's briefing on this appeal, his true concern is with his potential incentive award as a class member in his New York class action and the potential attorney visa might come out of his New York class action. His interest in the benefits to the potential class in the Swinton case are an afterthought. If Mr. Stark wishes to protect his personal interest in his claims and seek a result different than the proposed class settlement in Swinton, as Your Honors have noted, Mr. Stark is free to pursue an individual action in New York without the need to intervene in Swinton or have this case stayed or transferred to New York. The District Court in this matter correctly recognized Mr. Stark's options in lieu of intervention in or stay or transfer of this case and properly rejected all of Mr. Stark's arguments in those regards. For that reason, Your Honors, we are respectfully requesting that the District Court be affirmed in all respects. Before I address the two main arguments that have arrived under Rule 24A and then the second stay or transfer under the first to file rule, I would like to lodge, I suppose, my objection to the consideration of any documents, procedural events in either Stark or Swinton that have occurred since the District Court order that was appealed in this matter. I think I am the only party that has not submitted additional information that postdates the Honorable Judge Rose's decision. I believe that her decision should rise or fall depending upon the information that was available to Judge Rose at the time she ruled on the motions that eventually became the subject of this appeal. I do not think it's appropriate to determine the propriety of her underlying rulings, Judge Rose's underlying rulings, in light of events that have occurred in the time that has elapsed since she made those decisions and since this appeal. Turning then to the two arguments that Mr. Stark has raised on appeal, first, intervention has a right under Rule 24A. There are two prongs of the three-pronged test, Your Honors, for intervention of right that are at issue on appeal. First, whether Mr. Stark can establish that his interests may be impaired if he is prohibited from intervening in the Swinton matter. As the Court has noted, as Judge Rose correctly decided, Mr. Stark has the right to opt out of, had the right to opt out of, the Swinton class action if he believed it appropriate to preserve his right to conduct his legal claim in the manner he saw fit, reach whatever resolution he believed appropriate. Opting out was an option to him. At the time Judge Rose considered all of the motions underlying this appeal, all of the arguments, Mr. Stark was not yet a class representative in his case. He was simply an individual plaintiff in a pending case in a different federal district asserting the same claims as we had in this matter, the Swinton matter. Thirty seconds remaining. So we believe, Your Honors, that both there is no impairment of Mr. Stark's interests, nor is there any inadequacy of representation. We would also like to ask that the Court affirm the District Court's decision regarding the first to file rule, because there would be inefficiencies, at least as of the time of Judge Rose's underlying ruling, had she allowed to stay or transferred this case to the Eastern District of New York. So for those reasons, Your Honors, we would ask that this Court affirm Judge Rose's decisions in all respects. Thank you. Thank you, Mr. Eard. Do you also please stand by? Judge Strauss, do you have any questions of this counsel? Mr. Eard, I do have one, and this is with regard to the District Court's decision not to stay or transfer. I mean, it does appear that we have what looks like a second filed copycat action here. So why isn't this situation what the first to file rule was intended to prevent? Thank you, Your Honor. The first to file rule is really an equitable principle, and it's primarily meant to protect judicial efficiency. It's less concerned, at least in my understanding of the case law, including from this Court, with individual parties' interests and who gets to go first and whose case has to take a back seat. I believe the different courts, different judges simultaneously doing work on competing matters. So if you look at it from an efficiency standpoint, Your Honor, the Swinton case, our case, was farther along substantively than the Stark matter was. Because at the time Judge Rose considered these issues in 2018, Stark was state. It was on appeal to the Second Circuit, Your Honor, and because the appeal was from a pre-answer motion to compel arbitration, absolutely nothing had happened in Stark at the time Judge Rose considered the underlying motions. Conversely, in Swinton, we had moved forward with informal discovery. We had negotiated a proposed nationwide class action settlement, and we were actually in the process of submitting and did in fact submit for preliminary approval a proposed class action settlement to Judge Rose at the time she was also considering the underlying motions. So that's why Judge, I think from an equitable standpoint, from a judicial efficiency standpoint, it was appropriate for Judge Rose to decline to stay or transfer Swinton under the first-to-file rule. Okay, thank you. And Judge Gross, any further questions? No, thank you. Judge Shepard, any questions? I do have a question. Counsel, are Mr. Swinton and Mr. Stark in the same position with respect to possible compelled arbitration? I just want to make sure I understood your question, Your Honor. Were you asking whether the exposure to a possible order compelling arbitration differs between Mr. Stark and Mr. Swinton? Well, does one have a better case in defending against that kind of a claim? I read the Second Circuit opinion, and I'm gathering that it was significant that Stark made this purchase online, I think through Amazon perhaps, and that factored into the decision of the Second Circuit, and I'm wondering if Mr. Swinton would be in the same position as Mr. Stark if faced with that, a motion to compel arbitration. Okay, Judge, thank you. I believe that their positions are identical, Your Honor. The chances of Mr. Swinton surviving a motion to compel arbitration are no less than Mr. Stark's were. I can say that with confidence, Your Honor, because I was the attorney for Mr. Swinton who did the majority of the work necessary to prepare our resistance and brief in response to the defendant's Square Trades motion to compel arbitration in this case, and I think that the nuances, the differences between Mr. Stark and Mr. Swinton's positions, and in particular Square Trade has raised, are technicalities. They will not change the overarching issues with the arbitration clause and class action waiver that caused the Eastern District of New York and the Second Circuit Court of Appeals to reject Square Trade's arguments. I think we will benefit from the exact same principles should we have that necessity with Mr. Swinton. Judge Shepard, more questions? No, thank you very much. No, thank you, Your Honor. And Mr. Erb, you may stand aside. Mr. Winthrop, are you ready to present argument? I am. Please proceed. Okay, thank you, Your Honor, and may it please the Court, it's Douglas Winthrop of Olive First, the Eleventh Circuit decision on which Mr. Stark primarily relies, the technology training case, has nothing to do with the facts of this case. In that case, after years of active litigation, one of the lawyers from the plaintiff's law firm went to a new firm and knowing the exact history of settlement negotiations, crafted a scheme to bring a new class action against the defendant and immediately settle that case by undercutting the settlement goals of the plaintiff in exchange for huge unearned attorney's fees. The problem there was that this showed that the plaintiff was not adequately representing the interests of the intervener. To the contrary, the plaintiff was colluding to actively sell out those interests for $5 million in attorney's fees for doing nothing. And Mr. Waltman quoted correctly, I believe, when the Eleventh Circuit rejected the District Court's review of that case and denial of intervention, it denied it, it overturned because it said the District Court's ruling conflicted with the Supreme Court's recognition that, quote, members of the class have a right to intervene if their interests are not adequately represented by existing parties. That's what that case is about. Here, the District Court explained in its order, looked at all of the facts and circumstances presented and there's nothing even approaching anything like that in this case or anything suggesting that Mr. Swinton has any interest in getting a good result for the class that's any less than Mr. Stark's or anyone else's. The undisputed evidence about the origins of this case and, indeed, which Square Trade learned about only in the course of briefing on the intervention motion is that a lawyer in Iowa called up his former law partners about what he believed was an unsatisfactory experience he had as a customer of the defendant. Those lawyers did an investigation. They found the Stark course. They read the filings in that case and they filed a lawsuit on behalf of their client. This was not driven by lawyers. I understand it was driven by the client who had a claim. They then immediately faced defensive actions from defense counsel they did not know and who did not know them, including removal of the federal court and the motion to compel arbitration. Then you turn to the settlement that was negotiated. That settlement provides for nearly full recovery for people who have a claim for damages and compensation even for people who don't. And the attorney's fees paid to plaintiff's counsel will be low. In fact, with briefing on the motion to compel arbitration, the intervention motion, the motion for preliminary final approval on this appeal, and even the preparation for this argument, if the plaintiff's counsel are making any money on this case, it can't be much. The district court correctly held that Mr. Stark had not overcome the presumption that Mr. Swinton adequately represented his client. Second, it's important to remember what Mr. Stark sought from the district court. Mr. Stark did not and does not want to be a part of this litigation. He moved to intervene to oppose the proposed settlement and to bring a motion to stay or transfer the case. While the district court denied intervention, it permitted him to file a brief setting out all of his objections to the settlement and it considered his motion for a stay or transfer, obviously. Therefore, as this court held in Jenkins, intervention was not necessary to protect whatever purported interest he has in the subject matter of this action. Third, Mr. Stark takes issue with the district court's decision not to stay or transfer the case per the first to final rule. But both district courts that have considered the sequencing of these cases have reached the exact same conclusion. One minute remaining. The district court here rejected the idea that a case that has been presented for resolution should be stayed in favor of a stayed case in which the pleadings are not even set. And as you noted, the district court in New York ruled on its own that the case there should be stayed until the settlement in the case here is concluded. The district court did not abuse discretion, therefore in declining to stay or transfer this case. I want to make two quick comments on the argument. The reference to 19 months since preliminary approval is quite misleading. As everyone knows, a class action settlement goes through several stages. There was preliminary approval, then there was notice to the class, and then there was final approval. The final submission of papers on final approval was in December of 2019. So that's the waiting time for the court to rule. And I would just say the issue on alignment of interests is, well, the question is, does the intervener and the plaintiff have the same interest? Here, they both have identical interests, which is to get a recovery for their claims from square trading. Mr. Winthrop, thank you for the argument. Please stand by. Judge Gross, do you have any questions? I have no questions. Judge Shepard, do you have any questions? I do not. And I don't either. So, Mr. Waldman, are you prepared for rebuttal argument? I will try to talk very quickly. Proceed. Okay, first of all, I want to correct something that counsel for square trading just said, which was wrong, that Stark moved to intervene to challenge the proposed settlement. Untrue. There was no proposed settlement. That didn't happen until 10 days after he filed his motion to intervene. Second, 19 months from the time the preliminary approval of the settlement is moved for, and it still hasn't gotten a final decision, is extraordinary. It doesn't happen. Third, Judge Shepard, I believe you asked whether there was a difference between Sweeten's ability to withstand the arbitration clause defense versus Stark's. Of course there was. Stark's already defeated that motion. Sweeten has not. And all you need to know is if you look at the transcript of the proceeding that I referenced earlier in the Eastern District where square trade told the court why it's going to defeat Sweeten's motion, it is going to win its motion to compel arbitration. And to respond to what Mr. Sweeten's counsel said, you can consider what was recently filed, although it wasn't before the judge, the district court, when she ruled on a motion to intervene, because the general rule against consideration of an issue not passed down below is not absolute. And I'll refer you to the Ames New Nationwide Mutual Insurance Company of the 8th Circuit, 760 F. 3rd, 763 F. 770, citing the citizenry with the United States Supreme Court decision. Time has expired. Mr. Wallman, your time has expired, but please again stand by. Judge Gross, do you have questions at this point? I have no further questions. Judge Shepard, do you have questions now? I do have one question following up on this issue of the ability to withstand compelled arbitration counsel. I looked at that transcript, I have to confess I kind of scanned it, tried to focus in on what I thought was significant. Can you refer me to, and you may have already done it and I just didn't note it, can you refer us to the part of that transcript where that was discussed? Yes, it's between pages 12 through page 14. Page 12 in general and 13 and 14 is very specific as to why Slayton has deficiencies. Got it. Thank you. Okay, thank you. I assume no more questions, Judge Shepard? I have no further questions. Go ahead. Your Honor, this is Doug Winthrop. May I just comment on that as well? No, no, no. You had your time, Mr. Winthrop, and we don't have solo rebuttal here. Now, we do allow judges to ask more questions though, so we'll go then to Judge Gross. Do you have any final questions for any of the counsel? I think this has been covered, but just to make sure, I think it might be helpful to the panel if we could have a summary of the current status of both the Stark action in the Eastern District of New York and the Slayton action. As I understand it, we're still in a waiting period, but I would like to know exactly the status of those two cases. Okay, and who do you want to ask that of? One, two, or three of them? Well, I think Mr. Winthrop probably is familiar with both cases. Okay, Mr. Winthrop, that question is directed to you. Yes. In the New York case, the judge in New York, on its own motion, issued that order in September of, I'm just looking at my chronology, September of 2019, staying all proceedings, pending final approval of the settlement in Swinton. At the time before the court there, the Stark plaintiffs were seeking to have, applying for a preliminary injunction to apply the Second Circuit's ruling to the entire class, and likewise, Square Trade had filed a motion to dismiss two of the causes of action in that case, in the complaint, and the judge did not rule on those, he just basically stopped everything and said, I'm waiting, we're staying until the Swinton action is resolved, at least until the settlement approval. In the Swinton action, the hearing on the motion for final approval was in June of 2019. In July, the judge ordered the parties to provide some additional information. At the end of August, that information was supplied. In October, Mr. Stark's counsel, actually, Mr. Stark's counsel found a client who was a class member who had knocked it out, and so they appeared in the district court and opposed final approval, and they submitted an objection by this class member, so that was done, there was a briefing on that, they filed a brief in October of 2019, Square Trade responded in November of 2019, and Square Trade advised the court that it was going to provide some additional information to the court in a subsequent filing, which it did on December 16th, 2019, so that December 2019 was the last filing in the case, and we're now waiting for the judge to rule on the motion for final approval of the settlement. Thank you. Judge Gross, did that answer the question, or do you have further inquiry? Well, I suppose in fairness, I should ask Mr. Waldman if he agrees with that conclusion. Mr. Waldman? It is generally what happened, that the case has been standing for over six months in New York, and it's been now 19 months and counting since the final approval motion in the settlement has been made, and there was still no decision after a lot of additional information was Okay, and we finally have the dreaded interference all of a sudden here, but we're almost to the end. Judge Shepard, I want to offer you the opportunity for any final questions for any counsel. No, I have no other questions. Okay, and I have none again, and thank you, counsel, for the argument. Case number 18-3186 is submitted for decision by the court, and this court is adjourned until further call of the court. Ms. Rudolph.